## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## EVANSVILLE DIVISION

| | |
|---|---|
| IN RE: | IN PROCEEDINGS UNDER CHAPTER 7 |
| CATHERINE AILEEN WHITNEY | CASE NO: 18-70871 |
| DEBTOR | JUDGE: BASIL H. LORCH, III |

### MOTION FOR RELIEF FROM AUTOMATIC STAY
### AND ABANDONMENT OF PROPERTY

Comes now U.S. Bank National Association, as indenture trustee, for CIM Trust 2016-4, Mortgage-Backed Notes, Series 2016-4, a secured Creditor in the above captioned proceeding, by counsel, and respectfully moves the court to terminate the automatic stay imposed by 11 U.S.C. § 362 to enable Creditor to foreclose its mortgage and otherwise exercise its contractual and state law rights as to the following real property: 5619 North State Road 57, Petersburg, IN 47567 and for an order directing the trustee to abandon, or otherwise declare as abandoned from the estate, 5619 North State Road 57, Petersburg, IN 47567, and as basis therefore states as follows:

1.      On August 10, 2018, the above named Debtor, Catherine Aileen Whitney a/k/a Catherine A. Whitney, filed a petition pursuant to Chapter 7 of the Bankruptcy Code.

2.      U.S. Bank National Association, as indenture trustee, for CIM Trust 2016-4, Mortgage-Backed Notes, Series 2016-4 is the holder of a secured claim with an approximate outstanding balance of $62,351.19 with interest according to the note as of August 14, 2018, plus late charges and attorney fees.  Said claim is secured by the real property located at 5619 North State Road 57, Petersburg, IN 47567, and more particularly described in the mortgage, a copy of which is attached hereto.

3.  The above described mortgage was given to secure a Note dated January 24, 2003, by the Debtor to American General Financial Services, Inc., in the principal sum of $73,167.00.  A copy of the endorsed Note, Mortgage, and Assignments of Mortgage are attached hereto.

4.  The Debtor's last payment was applied to the September 1, 2017 payment. Debtor is due for the October 1, 2017 payment and all subsequent payments, in the amount of $6,931.02 (9 payments at $614.69 per month, 1 payments at $701.51 per month and 1 payments at $697.30 per month), plus late charges, court costs and attorney's fees, along with additional fees and advances.

5.  Per Debtor's schedules the subject real estate is valued at approximately $30,000.00.

6.  Claimant has reason to believe that there is little or no equity in the subject real estate.

7.  Per Debtor's schedules there are no other encumbrances on the subject real estate.

8.  Per Debtor's schedules she intends to surrender the subject real estate.

9.  The failure of the Debtor to make payments, the stated intention to surrender, and lack insufficient equity to secure Creditor's interest, allows no protection of the interest of U.S. Bank National Association, as indenture trustee, for CIM Trust 2016-4, Mortgage-Backed Notes, Series 2016-4, within the meaning of § 362 of the Bankruptcy Code.

10.  Nationstar Mortgage LLC, d/b/a Mr. Cooper, services the loan on the property referenced in this motion.   In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtors obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of U.S. Bank National

Association, as indenture trustee, for CIM Trust 2016-4, Mortgage-Backed Notes, Series 2016-4 (hereinafter "Movant").  Movant, directly or through an agent, has possession of the promissory note.  Movant will enforce the promissory note as transferee in possession.  Movant is the original mortgagee or beneficiary or the assignee of the Mortgage.

. WHEREFORE, U.S. Bank National Association, as indenture trustee, for CIM Trust 2016-4, Mortgage-Backed Notes, Series 2016-4 respectfully requests that this Court issue an Order:

1)  terminating the stay as to 5619 North State Road 57, Petersburg, IN 47567 and U.S. Bank National Association, as indenture trustee, for CIM Trust 2016-4, Mortgage-Backed Notes, Series 2016-4, to permit said secured creditor to take any and all actions necessary to accelerate the balance due on this obligation, to foreclose its mortgage, to sell the property in accordance with state law, to apply the net proceeds to this obligation, and to otherwise exercise its contractual and state law rights at to the following real property: 5619 North State Road 57, Petersburg, IN 47567.

2) abandoning from the estate: 5619 North State Road 57, Petersburg, IN 47567, and order the trustee to abandon the property as burdensome and of inconsequential value or benefit to the estate,

3) waive the fourteen (14) day stay as provided for by Rule 4001 (a) , and

4)  for all other relief that is just and appropriate.

Respectfully submitted,


/s/ Jason E. Duhn
Jason E. Duhn (IN-26807-06)
Shapiro, Van Ess, Phillips & Barragate, LLP
Attorney for Creditor
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone:  (513) 396-8100
Fax:  (847) 627-8805
Email:  jduhn@logs.com

## **CERTIFICATE OF SERVICE**

Certifier certifies that it has served a copy of this Notice by ordinary U.S. mail or served electronically through the Court's ECF System on this 22nd day of August, 2018, to the following entities:

Catherine Aileen Whitney a/k/a Catherine A.
Whitney
1936 Eastland Dr.
Evansville, IN 47715

Dax Jameson Miller
The Law Offices of Dax J. Miller, LLC
201 NW 4th Street, STE 111
Evansville, IN 47708

R. Stephen LaPlante
101 N.W. First St., STE 116
P.O. Box 3556
Evansville, IN 47734-3556

U.S. Trustee
101 W. Ohio Street
Suite 1000
Indianapolis, IN 46204

/s/ Jason E. Duhn
Jason E. Duhn (IN-26807-06)
Shapiro, Van Ess, Phillips & Barragate, LLP
Attorney for Creditor
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone:  (513) 396-8100
Fax:  (847) 627-8805
Email:  jduhn@logs.com

(Page 11 of 27)

Copy

**RECEIVED FOR RECORD**
Instr. No. _03 - 277_
This _27_ day of _____
A.D. _2003_ at _1:44_ o'clock _A_ M
and recorded in Record _366_
at page _45 - 47_
_Tom Edrington_
Recorder Pike County
Recorder's Fee _13 4_

Reception No. _____

Recorded this _____ day of _____, A.D., _____ o'clock _____ m.

## REAL ESTATE MORTGAGE
(This mortgage secures the described indebtedness and renewals thereof.)

THIS INDENTURE WITNESSETH, that ___NANCY LEE LONG_____ and
CATHERINE AILEEN WHITNEY   JOINT TENANTS WITH RIGHT OF SURVIVORSHIP
hereinafter called Mortgagor(s) of ____PIKE_____ County, in the State of ____INDIANA_____,
Mortgage(s) and Warrant(s) to AMERICAN GENERAL FINANCIAL SERVICES INC. 114 E MAIN ST.
hereinafter called Mortgagee, of DAVIESS   WASHINGTON, IN. 47501 County, in the State of INDIANA
the following described Real Estate situated in ____PIKE____
County, in the State of Indiana, as follows, to wit:

SEE ATTACHED

DEMAND   ☐ Anytime after_____ year(s) from the date of this loan we can demand the full balance and
FEATURE   you will have to pay the principal amount of the loan and all unpaid interest accrued to the day we
(if checked)   make the demand. If we elect to exercise this option you will be given written notice of election at
least 90 days before payment in full is due. If you fail to pay, we will have the right to exercise any
rights permitted under the note, mortgage or deed of trust that secures this loan. If we elect to
exercise this option, and the note calls for a prepayment penalty that would be due, there will be no
prepayment penalty.

to secure the repayment of a promissory note of even date herewith for the principal sum of
$ _73,167.00_____ executed by the Mortgagor(s) and payable to the Mortgage, on or before _360_
months after date, in installments and with interest thereon, all as provided in said note, and any renewal thereof;
the Mortgagor(s) expressly agree(s) to pay the sum of money above secured, all without relief from valuation or
appraisement laws, and with attorneys fees; and upon failure to pay any installment on said note, or any part
thereof, at maturity, or the interest thereon, or any part thereof, when due, or the taxes or insurance as
hereinafter stipulated, then said note shall immediately be due and payable, and this mortgage may be foreclosed
accordingly; it is further expressly agreed by the undersigned, that until all indebtedness owing on said note or
any renewal thereof is paid, said Mortgagor(s) shall keep all legal taxes and charges against said premises paid
as they become due, and shall keep the buildings and improvements thereon insured for fire, extended coverage,
vandalism and malicious mischief for the benefit of the Mortgagee as its interests may appear, and the policy duly
assigned in the amount of SEVENTY THREE THOUSAND, ONE HUNDRED SIXTY SEVEN AND 00/100 Dollars
($ _73,167.00_____ ), and failing to do so, said Mortgagee may pay said taxes, charges and/or insurance,
and the amount so paid, with interest at the rate stated in said note, shall be and become a part of the
indebtedness secured by this mortgage. If not contrary to law, this mortgage shall also secure the payment of all
renewals and renewal notes hereof, together with all extensions thereof. The Mortgagors for themselves, their
heirs, personal representatives and assigns, covenant and agree to pay said note and interest as they become
due and to repay such further advances, if any, with interest thereon as provided in the note or notes evidencing
such advances. If mortgagor shall fail to keep the real estate in a good condition of repair or shall permit the real
estate to be in danger of the elements, vandalism or damage from other cause, Mortgagee may take such steps
as are necessary in its judgment to protect the real estate.

If not prohibited by law or regulation, this mortgage and all sums hereby secured shall become due and
payable at the option of the Mortgagee and forthwith upon the conveyance of Mortgagor's title to all or any portion
of said mortgaged property and premises, or upon the vesting of such title in any manner in persons or entities
other than, or with, Mortgagor unless the purchaser or transferee assumes the indebtedness secured hereby with
the consent of the Mortgagee. If mortgagee exercises this option, Mortgagee shall give Mortgagor Notice of
Acceleration. This notice shall provide a period of NOT LESS than 30 days from the date the notice is delivered
or mailed within which Mortgagor must pay all sums secured by this Mortgage. If Mortgagor fails to pay these
sums prior to the expiration period, Mortgagee may invoke any remedies permitted by this Mortgage without
further notice or demand on Mortgagor.

If this mortgage is subject and subordinate to another mortgage, it is hereby expressly agreed that should any
default be made in the payment of any installment of principal or of interest on said prior mortgage, the holder of
this mortgage may pay such installment of principal or such interest and the amount so paid with legal interest
thereon from the time of such payment may be added to the indebtedness secured by this mortgage and the
accompanying note shall be deemed to be secured by this mortgage, and it is further expressly agreed that in the
event of such default or should any suit be commenced to foreclose said prior mortgage, then the amount
secured by this mortgage and the accompanying note shall become and be due and payable at any time
thereafter at the sole option of the owner or holder of this mortgage.

This instrument was prepared by           SHARON KAY GARRETT _____

014-00019 INA411 (9-14-98) REAL ESTATE MORTGAGE

_45_

(Page 12 of 27)

Copy

Mortgagor(s) expressly understand and agree that by this mortgage they hereby assign to the Mortgagee all or Mortgagor(s) rights and interest in and to all rents or payment on land contracts from any and all tenants or contract purchasers due or to become due from any such tenants or purchasers so long as the indebtedness hereby secured remains unpaid in whole or in part.

And the Mortgagor(s) covenants that at all times during the continuance of this mortgage, he (they) will perform all covenants and conditions of all prior and existing mortgages to include payment of principal and interest on any debt or debts secured thereby and Mortgagor(s) agree than in the even of default in the performance of such covenants and conditions then the Mortgagee hereof may declare that any debt hereby secured shall be due and owing in full and Mortgagee may enforce this mortgage by foreclosure with costs and attorney fees, or otherwise. In the event Mortgagor(s) default in the performance of any obligations secured by a prior and existing mortgage, Mortgagee hereof may at its sole election pay and discharge said prior debt and mortgage and Mortgagor(s) agree to be indebted to Mortgagee thereof in the additional amount so advance and this mortgage shall also secure such additional debt on the same terms and conditions.

And, at the option of the mortgagee, it should be lawful for the mortgagee, who is hereby given and granted full right, license, power and authority, to peacefully enter into and take possession of the premises hereby mortgaged, or any part thereof, and to collect, receive and receipt for all rents, issues and profits thereof; and the mortgagors agree to deliver to the mortgagee at any time after default, on request, possession of the mortgaged premises and all leases, papers and records at any time in the possession or control of the mortgagors pertaining to the premises, and further agree to make, execute and deliver to the mortgage all such further assurances as may be proper for perfecting or completing the security hereunder.

IN WITNESS WHEREOF, the said Mortgagor(s) ha ᵛᵉ hereunto set _their_ hand(s) and seal(s) this 24th day of JANUARY , 2003.

_Nancy Lee Long_ (SEAL)     _Catherine A. Whitney_ (SEAL)
Type name here **NANCY LEE LONG**     Type name here **CATHERINE A. WHITNEY**

_____ (SEAL)     _____ (SEAL)
Type name here                        Type name here

STATE OF INDIANA         )
COUNTY OF  DAVIESS      ) SS:

Before me, the undersigned, a Notary Public in and for said County, this _____ 24th _____ day of JANUARY _____ 2003 , came _____ and acknowledged the execution of the foregoing instrument.

WITNESS OF MY HAND and official seal.

My Commission expires___3/28/08____     _Sharon Kay Garrett_____Notary Public
COUNTY OF RESIDENCE MARTIN                        SHARON KAY GARRETT

**RELEASE OF MORTGAGE**

THIS CERTIFIES that the annexed Mortgage to _____ which is recorded in the office of the Recorder of _____ County, Indiana, in Mortgage Record_____ , page_____, has been fully paid and satisfied and the same is hereby released.

Witness the hand and seal of said Mortgagee, this _____ day of_____

_____(Seal)

STATE OF INDIANA, _____ County ss:     By: _____

Before me, the undersigned, a Notary Public in and for said county, this _____ day of _____ came_____and acknowledged the execution of the annexed release of mortgage.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed by official seal.

My Commission expires _____     _____Notary Public

| MORTGAGE | FROM | TO | Received for record this _____ day of | at _____ o'clock _____ m., and recorded in Mortgage Record No._____ | page _____ Recorder | County _____ Fee $ _____ |
|---|---|---|---|---|---|---|

014-00019 INA412 (9-14-98) REAL ESTATE MORTGAGE

Hb

Copy

## Schedule A

Customer:    Long, Nancy Lee & Aileen, Catherine

The following described real estate, situated in Pike County, State of Indiana, to wit:

A part of the Northwest Quarter of the Southwest Quarter of Section 24, Township 1 North, Range 8 West, and more particularly described by metes and bounds as follows: Commencing at a point 44 rods East, from the Northwest corner of said Quarter-Quarter Section at a point where the center line of the Petersburg and Washington public highway crosses and intersects with the North line of said Quarter-Quarter Section and running thence in a Southwesterly direction with the center of said public highway a distance of 18 rods to the point of beginning of the lands herein conveyed, said point being also the Southeast corner of a certain tract of land heretofore on February 3, 1926 conveyed to Henry Mallory by Matilda E. Bilderback, and running thence in a Southwesterly direction along and with the center of said Washington and Petersburg public highway a distance of 15 rods; thence in a Northwesterly direction a distance of 12 rods to a point 11 rods in a Southwesterly direction from the most Southwesterly corner of a certain tract of land heretofore on February 9, 1926 conveyed to Henry Mallory by Matilda E. Bilderback; thence in a northeasterly direction a distance of 11 rods to the Southwesterly corner of said tract of land heretofore on February 9, 1926 conveyed to Henry Mallory by Matilda E. Bilderback; thence in a Southeasterly direction along and with the South line of the tract heretofore conveyed to Henry Mallory a distance of 14 rods to the center of the Washington and Petersburg road and point of beginning and containing 1 acre, more or less.

ALSO, a part of the Northwest Quarter of the Southwest Quarter of Section 24, Township 1 North, Range 8 West, Pike County, Indiana, described as follows: Beginning East 24 rods and South 19 degrees 12 minutes West 166 feet (along in existing fence line) from the Northwest corner at said Quarter-Quarter Section; thence South 19 degrees 12 minutes west 65 feet; thence Southeasterly 14 rods to a point in the center of State road 57 which is 18 rods Southwesterly along said road from the intersection of said road with the North line of said Quarter-Quarter Section; thence North 25 degrees 30 minutes East 65 feet along the center line of said road; thence Northwesterly 240 feet to the point of beginning, and containing 0.35 acre, more or less.

Subject to all legal easements, highways, and rights-of-way, and subject to all zoning ordinances and regulations.

47

(Page 2 of 27)

Cop



**LOAN AGREEMENT AND DISCLOSURE STATEMENT**

**AMERICAN GENERAL**
FINANCIAL SERVICES

| DATE  01/24/03 | ACCOUNT NUMBER ███ | TYPE OF LOAN (Alpha) H00 |
|---|---|---|

| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | LENDER'S TELEPHONE NUMBER 812-254-5280 |
|---|---|

AMERICAN GENERAL FINANCIAL SERVICES, INC.
114 E MAIN ST
WASHINGTON, IN 47501-2999

**BORROWER(S) NAME AND ADDRESS ("I","We")**

CATHERINE A WHITNEY
5619 N STATE ROAD 57
PETERSBURG, IN 47567

I will read this entire Loan Agreement and Disclosure Statement ("Agreement") and all related documents carefully. If I have any questions, I will ask them before I sign any of these documents. By signing, I am indicating my agreement to the statements, promises, terms, and conditions contained in the documents I sign.

**TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 10.05 % | $  151555.40 | $  69733.00 | $  221288.40 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 360 | $ 614.69 | monthly beginning 02/28/03 |
|  |  |  |

LATE CHARGE: ☐ If any payment is not paid in full within ____ days after its due date, I will be charged _____% of the _____ amount of the payment, but not more than $ _____ or less than $ _____.

☒ If any payment is not paid in full within __10__ days after its due date, I will be charged $ _16.00_ if the entire scheduled payment exceeds $ _0_ or $ _N/A_ if the entire scheduled payment is $ _0_ or less.

PREPAYMENT: If I pay off early:

☒ I may   ☐ I will not   have to pay a penalty or minimum charge.

☐ I may   ☒ I will not   get a refund or credit of part of the finance charge.

SECURITY: I am giving Lender a security interest in:

☒ Real estate located at:  5619 N STATE ROAD 57
PETERSBURG, IN 47567

☒ Motor Vehicles

| Year | Make | Model | Vehicle Identification No. |
|---|---|---|---|
| 1985 | LIBERTY | M. HOME | 01L23911 |

☐ Other Assets   Other Assets Description

☐ Household items described on the Personal Property Appraisal Form, which I have signed and which has been delivered to me with this Agreement.

ASSUMPTION: Someone buying my home, if it secures this loan, may not assume the remainder of this loan on the original terms unless approved by Lender.

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

**THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.**

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

_____
Borrower

_____
Co-Borrower

**SEE REVERSE SIDE FOR ADDITIONAL DISCLOSURES**

UNAA71 (10-13-02) Agreement (1-2)                          Page 1

(Page 3 of 27)

Copy

## ITEMIZATION OF AMOUNT FINANCED

Amounts paid to others on my behalf

| | | | |
|---|---|---|---|
| 1. $ NONE | | PAID TO |
| 2. $ NONE | | PAID TO |
| 3. $ NONE | | PAID TO |
| 4. $ NONE | | PAID TO |
| 5. $ NONE | | PAID TO |
| 6. $ NONE | | PAID TO |
| 7. $ NONE | | PAID TO |
| 8. $ 275.00 | Appraisal Fee | PAID TO C THOMAS WAGNER |
| 9. $ 25.00 | Credit Report Fee | PAID TO LENDER |
| 10. $ NONE | | PAID TO |
| 11. $ NONE | | PAID TO |
| 12. $ 15.00 | MV Certificate of Title Fee | PAID TO GOVERNMENT AGENCY |
| 13. $ 345.00 | Title Insurance Fee | PAID TO DATA SEARCH |
| 14. $ 50.00 | Document Preparation Fee | PAID TO LENDER |
| 15. $ NONE | | PAID TO |
| 16. $ 23.00 | Recording/Releasing Fees RE | PAID TO GOVERNMENT AGENCY |
| 17. $ NONE | | PAID TO |
| 18. $ NONE | | PAID TO |
| 19. $ NONE | | PAID TO |
| 20. $ NONE | | PAID TO |
| 21. $ 5997.00 | | PAID TO CATHERINE WHITNEY AND DISCOVER |
| 22. $ 2332.99 | | PAID TO CATHERINE WHITNEY AND EVANS FED C.U. |
| 23. $ 3947.00 | | PAID TO CATHERINE WHITNEY AND UNVL/CITI |
| 24. $ 55628.12 | | PAID TO CATHERINE WHITNEY AND CGABC |
| 25. $ | | PAID TO |
| 26. $ | | PAID TO |
| 27. $ | | PAID TO |
| 28. $ | | PAID TO |
| 29. $ | | PAID TO |
| 30. $ | | PAID TO |
| 31. $ | | PAID TO |
| 32. $ | | PAID TO |
| 33. $ | | PAID TO |
| 34. $ | | PAID TO |
| 35. $ | | PAID TO |
| 36. $ | | PAID TO |
| 37. $ | | PAID TO |
| 38. $ | | PAID TO |
| 39. $ | | PAID TO |
| 40. $ | | PAID TO |
| 41. $ | | PAID TO |
| 42. $ | | PAID TO |
| 43. $ | | PAID TO |
| 44. $ | | PAID TO |
| 45. $ | | PAID TO |

Amount Paid on Prior Account with Lender
46. $ NONE

Amounts Paid to me

| | | |
|---|---|---|
| 47. $ 594.90 ** | PAID TO CATHERINE WHITNEY |
| 48. $ 499.99 | PAID TO CATHERINE WHITNEY |
| 49. $ | PAID TO |
| 50. $ | PAID TO |
| 51. $ | PAID TO |
| 52. $ | PAID TO |
| 53. $ | PAID TO |
| 54. $ | PAID TO |
| 55. $ | PAID TO |
| 56. $ | PAID TO |

**For the purchase of the non-credit insurance(s) or other product(s) I requested, or I may cash the check and keep the funds.

$ 69733.00  Amount Financed (Sum of lines 1 – 56)

$ 3434.00  Prepaid Finance Charges (itemized below)

## PREPAID FINANCE CHARGES

| | | |
|---|---|---|
| 1. $ 2025.00 Points | PAID TO LENDER |
| 2. $ 1350.00 Loan Origination Fee | PAID TO LENDER |
| 3. $ NONE | PAID TO |
| 4. $ 59.00 Tax Service Fee | PAID TO ZCRETS |
| 5. $ NONE | PAID TO |
| 6. $ NONE | PAID TO |
| 7. $ NONE | PAID TO |
| 8. $ NONE | PAID TO |
| 9. $ NONE | PAID TO |
| 10. $ NONE | PAID TO |
| 11. $ NONE | PAID TO |
| 12. $ NONE | PAID TO |
| 13. $ NONE | PAID TO |
| 14. $ NONE | PAID TO |

**SEE NEXT PAGE FOR IMPORTANT INFORMATION**



Cop

## ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person--the arbitrator--instead of a judge or jury, to resolve the dispute. **TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT ("this Arbitration Agreement").**

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("Covered Claims". This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

> My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

**COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender, any third parties that assigned Retail Contracts or other agreements to Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are American General Finance Corporation, American General Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company. In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

**MATTERS NOT COVERED BY ARBITRATION.** I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies (an "Excluded Collateral Lawsuit"). I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counter claim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover an amount which does not exceed the total sum of $5,000.00 (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit"). If an Excluded Damages Lawsuit is filed, the other party cannot require that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than $5,000, then that claim, counterclaim, cross-claim, or third party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin, or foreclosure or by having filed any claims in court seeking to recover a total sum of $5,000.00 or less.

**ARBITRATION RULES AND PROCEDURES.**

**A.     ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the rules and procedures of the National Arbitration Forum ("NAF") that are in effect at the time arbitration is started and under the rules set forth in this Arbitration Agreement. At my request, Lender will provide me a copy of the NAF Rules. If I lose my copy, Lender will give me another one if I ask for it. I may also obtain a copy of those rules by calling NAF at 1-800-474-2371 or by reviewing NAF's web-site at www.arb-forum.com. In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender and I agree to submit all disputes to the American Arbitration Association ("AAA") for proceedings conducted pursuant to the AAA's Commercial Rules and Expedited Procedures. In the event that AAA is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the AAA for good cause, then Lender and I agree to submit all disputes to JAMS for proceedings conducted under its Financial Services Arbitration Rules and Procedures. If there is a conflict between the rules of the NAF (or the AAA or JAMS) and this Arbitration Agreement, this Arbitration Agreement will control.

**B.     SELECTION OF ARBITRATOR.** NAF maintains lists of approved arbitrators. NAF will provide Lender and me each a list of seven (7) possible arbitrators. Lender and I will each have an opportunity to strike three (3) persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator.

**C.     STARTING ARBITRATION.** Before I start arbitration, I agree to write to Lender at the address shown for Lender in this Agreement, unless I have received notice of a new address for Lender, and I agree to give Lender a reasonable opportunity to respond and resolve any errors. In my letter, I will give the following information: my name and account number, a description of my claim or dispute and why I believe Lender has made an error, the dollar amount of my claim or dispute, and a description of any other information I need from Lender. Before Lender starts an arbitration, it must write to me at my billing address; describe its claim or dispute; state the dollar amount of its claim or dispute; and give me a reasonable opportunity to resolve the claim or dispute. If a Covered Claim cannot be resolved in the foregoing manner, either Lender or I can start arbitration. Except as described in Paragraph E below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. To start an arbitration, Lender and I agree to follow the rules of the NAF (or, if applicable, the rules of the AAA or JAMS).

**D.     COSTS OF ARBITRATION.** The NAF, AAA, and JAMS all charge certain fees in connection with arbitration proceedings they conduct. I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or the terms of any other agreement with me. Each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by law or by the terms of any other agreement between the parties, to the extent permitted by applicable law.

**E.     CONDUCT OF PROCEEDINGS.** In conducting the arbitration proceedings, the arbitrator shall be bound by the Federal Rules of Evidence; however, the federal or any state rules of procedure or discovery shall not bind the arbitrator. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the loan or other agreement between Lender and me. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

### SEE REVERSE SIDE FOR ADDITIONAL ARBITRATION TERMS

UNBA21 (10-13-02) Agreement (3-4)                    Page 3                    Initials

Copy

## ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL (con'd)

**F.  ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims involving more than $100,000, any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the NAF, AAA, or JAMS, as the case may be. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision, and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable laws or rules.

**G.  LIMITATION OF PROCEEDINGS.** Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes, or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements). Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons. I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim.

**H.  LIMITATION OF ARBITRATOR'S AUTHORITY:** The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding any punitive damages, the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the arbitrator must state the precise amount of the punitive damages award. The arbitrator must also conduct a post-award review of any punitive damages, allowing the parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the arbitration is conducted. The arbitrator may award injunctive relief that would benefit either Lender or me in connection with resolving a Covered Claim between Lender and me, but the arbitrator may not award injunctive relief for the benefit of other persons or groups of persons who are not named parties to the arbitration proceeding.

**I.  LOCATION OF THE ARBITRATION.** The arbitration will take place in the county where I live unless Lender and I agree to another location. If Lender and I agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

**J.  ENFORCEMENT IN COURT.** Nothing in this Arbitration Agreement shall prevent either Lender or me from enforcing all rights under this Arbitration Agreement if a Covered Claim is filed in court.

**K.  FORUM SELECTION CLAUSE.** If either Lender or I need to file a lawsuit to enforce this Arbitration Agreement or to pursue claims that either may or may not be arbitratable under this Arbitration Agreement, the exclusive venue for that suit will be a state court located in the county where Lender's office is located or where I sign this Agreement, or in the federal court covering that county, unless the governing law requires suit to be filed in another location. Nothing in this paragraph shall prevent either Lender or me from enforcing its or my rights under this Arbitration Agreement if the Covered Claim is filed in court.

**ADDITIONAL INFORMATION.** I may obtain additional information about arbitration by contacting the National Arbitration Forum, Inc., at P.O. Box 50191, Minneapolis, Minnesota 55405. (800-474-2371 (Telephone)). (651-631-0802 (Fax)). www.arb-forum.com (e-mail).

**OTHER IMPORTANT AGREEMENTS.** Lender and I agree:

(a)  This Arbitration Agreement does not affect any statute of limitations or claims of privilege recognized at law.

(b)  The loan and insurance transactions between Lender and me and other applicable parties are transactions involving interstate commerce, using funds and other resources from outside the state.

(c)  The Federal Arbitration Act applies to and governs this Agreement. State arbitration laws and procedures shall not apply to this Agreement.

(d)  This Agreement applies to and runs to the benefit of Lender's and my assigns, successors, executors, heirs, and/or representatives.

(e)  If any term of this Arbitration Agreement is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.

(f)  This Arbitration Agreement supersedes any prior arbitration agreement that may exist between Lender and me and can only be modified in writing signed by the parties.

(g)  This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

**I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.**

### SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION

Initials

Copy



**DATE OF LOAN.** __01/29/03__ (the date the Finance Charge is scheduled to begin to accrue).

**CONTRACT RATE.** _____ 9.49 % per year, which is the agreed interest rate.

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the Truth in Lending Disclosure on page 1 of this Agreement, and the other terms of this Agreement.

**SECURITY AGREEMENT.** If any type of personal property (property other than real estate ("real property")) is disclosed in the "Security" section of the Truth in Lending Disclosures, to secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I grant Lender a security interest under the Uniform Commercial Code or other applicable law in (1) the property identified in the "Security" disclosure of the Truth in Lending Disclosures on page 1 of this Agreement; (2) any substitutions or replacements of that property; and (3) the proceeds and products of that property (collectively referred to as the "Collateral"). Lender's security interest shall remain in effect until I have paid in full all amounts due under this Agreement and any modifications, renewals, and extensions thereof. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement where appropriate. If real property is disclosed in the "Security" section of the Truth in Lending Disclosures, I am signing a mortgage or deed of trust covering the real property at the same time that I am signing this Agreement.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that they are jointly and severally liable and that Lender may enforce this Agreement against all or any of them, but not in a combined amount exceeding the amount due.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Maker if this Agreement is in default. Unless required by law, Lender will not notify me if (a) this loan is in default, (b) Lender agrees to accept different payment terms, (c) Lender releases any security interest, or (d) Lender releases any Borrower(s) or Maker(s).

**CREDIT INFORMATION.** I authorize Lender to investigate my creditworthiness, including to obtain my credit report at anytime, as permitted by law.

**REQUIRED PROPERTY INSURANCE.** I agree to insure any automobiles, all terrain vehicles, snowmobiles, watercraft, other titled vehicles, large equipment, and dwellings and other structures attached to real property ("Property"), in which I have granted Lender an interest to secure my loan, against all risks of physical damage, including loss by fire and other hazards, for the term of the loan, in amounts and with deductibles approved by Lender ("Required Insurance"). Required Insurance must (1) be issued by an insurer and have terms and conditions satisfactory to Lender, (2) name Lender as loss payee or mortgagee, (3) not permit the addition of any other loss payee or mortgagee to the insurance policy unless Lender consents in writing, (4) provide that such insurance will not be canceled or modified without at least 15 days prior written notice to the loss payee or mortgagee, and (5) not include any disclaimer of the insurer's liability for failure to give such notice. I may purchase Required Insurance from whomever is acceptable to Lender or provide existing coverage through any insurance company or agent of my choice that is acceptable to Lender. Lender does not sell Required Insurance. I agree to provide to Lender satisfactory proof of Required Insurance. I agree to keep Required Insurance in force until all amounts I owe Lender under this Agreement are paid in full. In the event of damage to or loss of the Property, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may, but is not required to, do so on my behalf. I agree Lender may use any insurance proceeds to reduce any amounts I owe under this Agreement. To the extent permitted by law, I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds paid to Lender do not pay off all amounts I owe Lender under this Agreement, I remain responsible for payment of the balance of any amounts due under this Agreement.

**LENDER PLACED INSURANCE.** If at any time I fail to buy or keep in force Required Insurance, Lender may, but is not required to, purchase Required Insurance at my expense to protect Lender's interest in the Property. I agree that Required Insurance may, but to the extent permitted by law, need not, protect my interests. The coverage purchased by Lender may not pay any claim I make. I agree that the cost of Required Insurance purchased by Lender may be much more than the cost of Required Insurance I could have obtained on my own, and I agree that the cost of such Required Insurance may, to the extent permitted by law, be added to my loan balance and accrue interest at the Contract Rate. I authorize Lender to release to third parties any information necessary to monitor the status of Required Insurance on my Property and to purchase Required Insurance required by this Agreement.

**VOLUNTARY CREDIT INSURANCE.** Lender's affiliate may provide the credit insurance that I voluntarily select. Lender and/or its affiliates expect to profit from my purchase of voluntary credit insurance, and I consent to this.

**UNEARNED INSURANCE PREMIUMS.** I agree that Lender has the right to apply any unearned insurance premiums that Lender receives to reduce the unpaid balance of my loan in the event of default, termination, or cancellation of the insurance to the extent permitted by law.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to (a) correct any clerical errors that were made in connection with loan documents, (b) in obtaining the correct amounts due to others, and (c) in releasing all liens upon payment in full. Lender may consider any breach of this requirement as an event of default of this Agreement.

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval of or commitment to make this loan if Lender reasonably believes that (a) there are material omissions or misrepresentations in connection with my credit application, (b) there is a material, adverse change in my creditworthiness, (c) there are additional liens on the right, title, or interest of any collateral to be used for this loan, or (d) a sale or transfer of any right, title, or interest in any collateral to be used for this loan has or will occur that is not agreed to by the Lender.

**SEVERABILITY.** The fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any party without the express written consent of Lender.

### SEE REVERSE SIDE FOR ADDITIONAL INFORMATION

Copy

**DEFAULT.** Except as prohibited by law or as limited by other provisions of this Agreement, I will be in default of this Agreement if any one of the following occurs:

A. I fail to make any payment under this Agreement when due.
B. I fail to do anything else I have agreed to do in this Agreement.
C. Any statement or representation I made in my credit application is untrue or incorrect.
D. I fail to provide Lender with proof of employment, residence, insurance, or repair to credit history within three(3) business days after
   Lender's written request for this information.
E. I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary
   bankruptcy proceeding.
F. Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.
G. Any police or governmental agency seizes or impounds the Collateral, if the Collateral consists of personal property, or starts
   forfeiture proceedings against the Collateral.
H. If the Collateral consists of personal property, I relocate to another state without giving written notice at least 30 days before
   relocating.
I. I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.
J. Any other event or circumstance occurs that reasonably causes Lender to deem itself insecure or to believe that Lender's
   prospects for payment or realization upon the Collateral are impaired, unless prohibited by state law.

**(For Kansas residents only**, Lender believes the preceding events would significantly impair the prospect of payment, performance, or realization of collateral. Except for a default resulting from my failure to make any payment as required by this Agreement, the burden of establishing the prospect of such significant impairment is on the Lender.)

**GENERAL REMEDIES.** If I am in default on this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:

A. Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the
   Amount Financed, finance charges, and all other agreed charges. These amounts will accrue finance charges from the date I
   am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.
B. Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not
   required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges from the
   date paid at the Contract Rate until repaid in full to Lender.
C. If the Collateral consists of personal property, Lender may require me to make the Collateral available to Lender at a place
   Lender designates that is reasonably convenient to Lender and me.
D. If the Collateral consists of personal property, Lender may immediately immobilize, disable, or take possession of the Collateral
   by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender
   may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses.
E. Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover
   what I owe Lender, and Lender may sue me for those additional amounts.
F. If the Collateral consists of real property, Lender may begin foreclosure proceedings as described in the mortgage or deed of
   trust granting Lender a security interest in the Collateral.
G. Lender has the right, but not the obligation, to request termination of any voluntary credit or personal property insurance in the
   event of default, subject to any applicable restrictions under state law.
H. Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without
   losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights are hereunder cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral if it is personal property, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral securing this Agreement and taken into possession as provided above.

**WAIVER.** Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default, or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law.

**NOTICES.** If required by law, Lender will provide me with notices under this Agreement, if mailed, to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

**DELAY IN ENFORCEMENT.** Lender may delay enforcing any of its rights under this Agreement without losing them.

**SAVINGS CLAUSE.** All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the Principal, as defined below, that I owe under this Agreement or making a direct payment to me. To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

---

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods from a seller who either refers consumers to the lender or who is affiliated with the lender by common control, contract, or business arrangement:

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

**SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION**

UNAT72 (1-1-03) Agreement (5-6)                Page 6                Initial

Cop

**[X]** **INTEREST BEARING LOAN.** If checked, I agree to pay Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the amounts and on or before the dates set forth in the Payment Schedule in the Truth in Lending Disclosures on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. If I have not purchased credit insurance or have purchased single premium credit insurance, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) interest; and (c) unpaid Principal. If I have purchased credit insurance that is billed on a monthly basis, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) any past due credit insurance premiums billed on a monthly basis; (c) any past due loan payment(s); (d) currently due credit insurance premiums that are billed on a monthly basis; and (e) currently due loan payment. When applying payments to past and currently due loan payments, monies will be applied first to accrued interest with the remainder, if any, being applied to unpaid Principal. Because interest on my loan is earned daily, early payments will decrease the amount I owe, and late payments will increase that amount. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full.

**[ ]** **PRECOMPUTED LOAN.** If checked, I agree to pay the Total of Payments in the amounts and on the dates shown in the Payment Schedule in the Truth in Lending Disclosures on page 1 hereof, plus any other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. I agree to pay interest on any late charges and any amounts advanced by Lender to purchase Required Insurance that remain unpaid after my final scheduled payment due date, computed at the Contract Rate, until paid in full. If I have purchased credit insurance that is billed on a monthly basis, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) any past due credit insurance premiums that are billed on a monthly basis; (c) any past due loan payment(s); (d) currently due credit insurance premiums that are billed on a monthly basis; and (e) currently due loan payment. When applying payments to past and currently due loan payments, monies will be applied to the Total of Payments.

**PRINCIPAL.** Principal is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed.

**[ ]** **BALLOON PAYMENT.** If checked, my last scheduled payment is larger than my regular scheduled payments ("Balloon Payment").

**PREPAYMENT REFUND.** If my loan is not secured primarily by a first mortgage on real property, I may prepay all or any part of my loan at any time, subject to the payment of the penalty (if any) described below. If my loan is secured primarily on real property, (a) the Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, and (b) I may be required to pay a prepayment fee as described below as a condition of prepaying my loan.

If my loan is a Precomputed Loan and I prepay my loan in full, the amount I owe will be reduced by the unearned finance charges (which do not include any part of the Loan Origination Fee) computed by (a) if the term of this Agreement is 61 months or less, the Rule of 78s method, or (b) if the term of this Agreement is more than 61 months, the actuarial method, as provided by the Indiana Uniform Consumer Credit Code; provided, however, that, in any event, I agree to pay a minimum finance charge of $ __N/A__ .

If my loan is an Interest Bearing Loan and not secured by a first mortgage on real property and I prepay my loan in full, the amount I owe will be reduced by the excess of the total finance charges I have paid (including Prepaid Finance Charges, but excluding any broker fee I paid to a broker who is not affiliated with Lender and any Loan Origination Fee) over the maximum Finance Charge that would be permitted under the Indiana Uniform Consumer Credit Code for the period my loan is outstanding.

**PREPAYMENT PENALTIES AND FEES.**

**[ ]** If checked, there will be no prepayment penalty or fee.

**[X]** If checked, this loan is secured primarily by a first mortgage on real property, and Lender may charge and I agree to pay a prepayment fee equal to __6__ monthly payments, due as of the date of prepayment in full. I will not pay a prepayment fee if: (a) this loan is refinanced or consolidated by Lender or its affiliate; (b) the loan is prepaid with insurance proceeds; (c) the loan is prepaid as a result of a lawsuit or foreclosure; (d) Lender disapproves an assumption of this Agreement and exercises a due on sale clause and the prepayment fee is prohibited by applicable law; or (e) the loan is prepaid more than __60__ months after the Date of Agreement.

**[ ]** If checked, this loan is secured primarily by a subordinate mortgage on real property, and if I prepay my loan in full, Lender may charge and I agree to pay a prepayment penalty equal to _____%, computed on the the amount of my full prepayment plus other amounts I prepaid during the preceding 60 days, net of any refunds or rebates owed to me. I will not pay a prepayment penalty if: (a) this loan is refinanced or consolidated by Lender or its affiliate; (b) the loan is prepaid with insurance proceeds; (c) this loan is prepaid as a result of acceleration after default; (d) Lender disapproves an assumption of this Agreement and exercises a due on sale clause, and the prepayment penalty is prohibited by applicable law; or (e) this loan is prepaid ___ months after the Date of Agreement.

**LATE CHARGE.** I agree to pay any late charge described in the Truth in Lending Disclosures herein. The Late Charge is subject to change as allowed by IC 24-4.5-1-106.

**DEFERMENT CHARGE.** If my loan is a Precomputed Loan and I fail to make a payment within ten (10) days after its due date, I agree that Lender may unilaterally grant me a deferral and collect a deferment charge from me. The deferment charge will be computed by applying the Contract Rate proportionally to the amount of the deferred payment for the deferment period, as provided in the Uniform Consumer Credit Code. Deferment charges are due and payable at the time of deferment.

**CONVERSION.** If my loan is a Precomputed Loan and two (2) or more of my payments are partially or entirely in default for ten (10) or more days, Lender may convert my loan to an Interest Bearing Loan by deducting from the unpaid balance the same refund of unearned finance charges (after first deducting the Loan Origination Fee) that I would have received if I had paid in full one day prior to the due date of the first payment in default, and thereafter I agree to pay finance charges from the due date of the first payment in default on the unpaid amount at the Contract Rate.

**DISHONORED CHECK CHARGE.** If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $ _20.00_ .

**DEFAULT COSTS.** In the event of default, I agree to pay Lender's (a) court costs, (b) reasonable attorney's fees, and (c) costs to realize on any security interest, each if and to the extent permitted by applicable law.

**GOVERNING LAW.** The laws of the State of Indiana shall govern this Agreement, except as preempted by federal law.

**PLEASE SEE IMPORTANT INFORMATION ON REVERSE**

(Page 9 of 27)

Copy

**ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

IF I DEFAULT AND THIS LOAN IS SECURED BY A MORTGAGE ON MY HOME, I MAY LOSE MY HOME.

BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.                                                                    UNARBT (8-12-01)

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of this Agreement, the Truth in Lending Insurance Disclosures, the Privacy Notice, the Personal Property Appraisal Form (if applicable), and two copies of a Notice of Right to Cancel (if applicable) and agree to be bound thereby.

If this loan was initiated by a telephone sales call, then you are not obligated to pay any money unless you sign this contract and return it to the seller.

x _____    x _____ L.S.
Witness                              Borrower    CATHERINE A WHITNEY

x _____    x _____ L.S.
Witness                              Co-Borrower

                                     x _____ L.S.
                                     Co-Maker
                                     Print Name: _____

                                     x _____ L.S.
                                     Co-Maker
                                     Print Name: _____

Copy

## ALLONGE TO NOTE

**LOAN NUMBER:**

**NOTE DATE:** 1/29/03

**LOAN AMOUNT:** $73,167.00

**BORROWER(S):** CATHERINE    A WHITNEY

**PROPERTY ADDRESS:** 5619 N STATE ROAD 57, PETERSBURG  IN 47567

**ORIGINAL LENDER:**    AMERICAN GENERAL FINANCIAL SERVICES, INC.

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE:**

SPRINGLEAF FINANCIAL SERVICES, INC. F/K/A AMERICAN GENERAL FINANCIAL
SERVICES, INC. BY NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER ITS
ATTORNEY-IN-FACT

BY:    LATONYA DAVIS

**TITLE:  ASSISTANT SECRETARY**

Copy

```
201600000395
Filed for Record in
PIKE COUNTY, IN
JODY HOOVER, RECORDER
03-01-2016 At 10:27 am.
ASSGN MTG        12.00
Book    606 Page  478 -  478
```

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan No ██████
Springleaf Loan No ███████

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **SPRINGLEAF FINANCIAL SERVICES OF INDIANA, INC., F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC., WHOSE ADDRESS IS 601 N.W. SECOND SL, EVANSVILLE, IN 47708, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN TRUST 2013-1, MORTGAGE-BACKED NOTES, SERIES 2013-1, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage is dated 01/24/2003, and made by **NANCY LEE LONG AND CATHERINE A. WHITNEY** to **AMERICAN GENERAL FINANCIAL SERVICES, INC.** and recorded in **Book 366, Page 45 and Instrument # 03-277** in the office of the Recorder of **PIKE** County, **Indiana.** .

Dated on ___2/23___ /2016 (MM/DD/YYYY)
**SPRINGLEAF FINANCIAL SERVICES OF INDIANA, INC., F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC.**

By: _Heather Leibowitz_
    Heather Leibowitz
    **VICE PRESIDENT**
All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ___2/23___ /2016 (MM/DD/YYYY), by Heather Leibowitz as VICE PRESIDENT of SPRINGLEAF FINANCIAL SERVICES OF INDIANA, INC., F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Nicole Baldwin_
Nicole Baldwin
Notary Public - State of FLORIDA
Commission expires: 08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
NSMSA███████ -- DOCR ██████ [C-1] FRMIN1

Copy

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222284
Expires August 5, 2016

201800001345
FILED FOR RECORD IN
PIKE COUNTY CLERK
**JODY HOOVER, RECORDER**
DATE RECORDED: 07/03/2018 01:40 PM
RECORDING FEE       25.00
ASSGN MTG
PAGES: 2

## CORPORATE ASSIGNMENT OF MORTGAGE

Pike, Indiana
SELLER'S SERVICING #:   ⸭   "WHITNEY"

Date of Assignment: June 29th, 2018
Assignor: U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN TRUST 2013-1, MORTGAGE-BACKED NOTES, SERIES 2013-1 BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, FOR CIM TRUST 2016-4, MORTGAGE-BACKED NOTES, SERIES 2016-4 at 425 WALNUT STREET, CINCINNATI, OH 45202

Executed By: NANCY LEE LONG AND CATHERINE AILEEN WHITNEY JOINT TENANTS WITH RIGHT OF SURVIVORSHIP To: AMERICAN GENERAL FINANCIAL SERVICES, INC.
Date of Mortgage: 01/24/2003 Recorded: 01/27/2003 in Book/Reel/Liber: 366 Page/Folio: 45 as Instrument No.: 03-277 In the County of Pike, State of Indiana.

-POWER OF ATTORNEY Dated: 02/02/2017 Recorded: 05/24/2017 in Book/Reel/Liber: 169 Page/Folio: 254 as Instrument No.: 201700000961, between U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN TRUST 2013-1, MORTGAGE-BACKED NOTES, SERIES 2013-1 and NATIONSTAR MORTGAGE LLC,

Property Address: 5619 N STATE ROAD 57, PETERSBURG, IN 47567

  KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $73,167.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

  TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN TRUST 2013-1, MORTGAGE-BACKED NOTES, SERIES 2013-1 BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT
On June 29th, 2018

By: _____
OMAR BASPED, Vice-President

⸭ Redacted Per Assignor's Express Consent

STATE OF Texas
COUNTY OF Dallas

On June 29th, 2018, before me, TIM JACKSON, a Notary Public in and for Dallas in the State of Texas, personally appeared OMAR BASPED, Vice-President, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
TIM JACKSON
Notary Expires: 12/03/2019 #130457575

TIM JACKSON
Notary Public, State of Texas
Comm. Expires 12-03-2019
Notary ID 130457575

(This area for notarial seal)

This instrument was prepared by:
 Bernardo Hernandez, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019

When Recorded Return To:
 DOCUMENT ADMINISTRATION, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019